UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



MARTIN BERNSLEY

              Plaintiff                         Civ. Case No.

        against

The Advance Group, being a business
trade name of Advance Group, Inc.
and/or The Advance Group Inc. and/or
Advance Group LLC and/or Advance
Group, LLC and/or The Advance
Group NY, Inc., and/or John Doe
#1 through John Doe #5 inclusive                JURY DEMANDED
being fictitious names, intended to be
the owner or owners of The Advance
Group, and

Molloy Bros. Trucking Inc. d/b/a/ Molloy
Brothers Moving & Storage, and

John Doe #6 through John Doe #10, inclusive,
being fictitious names, intended to be the
officers of the companies that authorized and
participated in the sale complained of herein.

              Defendants               ]

COMPLAINT
of Plaintiff Martin Bernsley, Pro Se

Jurisdiction for this case is authorized under 28 USC 1332, diversity, as plaintiff and defendants are citizens of different states and the amount sued for exceeds $75,000, and 28 U.S. Code § 1367 as all claims are related to the same controversy.

Plaintiff demands a jury trial.

Plaintiff, Pro Se, complains of the defendants as follows:

INTRODUCTION

1. Plaintiff is a resident of Broward County, Florida.

2. Upon information and belief The Advance Group is a business trade name of Advance Group, Inc. and/or The Advance Group Inc. and/or Advance Group LLC and/or Advance Group, LLC and/or The Advance Group NY, Inc., all organized in Delaware, and/or unknowns named as John Doe #1 through John Doe #5, intended to be the owners of the Advance Group, all hereinafter referred to as "Advance" with a headquarters office at 185 Price Parkway, Farmingdale, New York.

3. Upon information and belief the defendant Molloy Bros. Trucking Inc. d/b/a/ Molloy Brothers Moving & Storage is a corporation organized in the State of New York hereinafter referred to as "Molloy" with a headquarters office at 185 Price Parkway, Farmingdale, New York.

4. That the individual John Doe #6 through John Doe #10 defendants are intended to be the officers of Advance and/or Molloy who authorized and/or participated in the illegal sale described below, all of whom are unknown to plaintiff.

5. Upon information and belief the defendant Advance and the defendant Molloy or one or the other or both operate and maintain the warehouse where plaintiff's property was stored.

6. In approximately 1998 plaintiff hired Molloy to pack and remove the contents from his former residence in Roslyn, New York and place the same in its warehouse for storage.

7. That the personal property consisted of furniture and antiques, paintings and craft art pieces along with items of a personal nature such as photographs, documents and memorabilia.

8. Plaintiff paid the storage fees from inception (1998 approximately) to 2019, which total approximately $75,000. Fees were usually paid once a year.

9. Thereafter plaintiff failed to pay accruing storage fees.

10. Plaintiff promised to pay all outstanding charges by December, 2020.

11. On October 26, 2020 defendant Advance notified plaintiff via email that it was going to enforce its warehouse lien for non-payment of storage fees.

12. On October 29, 2020 defendant Advance notified plaintiff by email it was going to sell plaintiff's property on November 12, 2020.

13. That between October 26, 2020 and November 12, 2020, plaintiff repeatedly notified Advance by email that he did not receive any notice of sale and other papers required by the laws of New York.

14. That prior to November 12, 2020 plaintiff repeatedly notified Advance by email that it was not in compliance with the law and that they were depriving plaintiff of his right to redeem his property.

15. That prior to November 12, 2020 plaintiff notified Advance by email that the value of his property exceeded $50,000.

16. That prior to November 12, 2020, plaintiff notified Advance by email that part of the property included valuable antiques and other valuable items.

17. That prior to November 12, 2020, plaintiff notified Advance by email of the anguish a wrongful sale would cause.

18. On November 11, 2020, Advance informed plaintiff by email that it sent the notice of sale via the U.S. Postal Service (USPS) with a tracking number of 7019-2280-0001-3798-6777

19. Plaintiff upon receiving the tracking number immediately used the USPS tracking service, discovered that whatever was mailed was delayed and not delivered.

20. Plaintiff shortly after receiving the tracking number on November 11, 2020 sent back by email a copy of the USPS report showing the delay and non-delivery as of October 28, 2020, a copy of which is attached to this complaint as Exhibit A.

21. The USPS report shows that under the tracking number given by Advance a mailing was made on October 22 which was not early enough to comply with the timing required by the statute.

22. That the mailing was in fact delivered on November 27, 2020 as shown in the USPS report attached as Exhibit B, which includes the USPS history of updates.

23. That the defendants did in fact mail an envelope to plaintiff on October 22, 2020, a date making it mathematically impossible to comply with the required notice requirements.

24. Advance and/or Molloy sold plaintiff's property on November 12, 2020.

25. Upon information and belief plaintiff's property was either sold in a sealed container or covered upon pallets and the property was not otherwise displayed.

26. That the value of plaintiff's property sold far exceeded the defendant's claim.

27. The methods and procedures used by defendants intentionally ignore the requirements with regard to lien sales and are directed at the public at large.

## AS AND FOR A FIRST CAUSE OF ACTION
### Bailee's illegal warehouseman's lien sale under New York Law

28. Plaintiff repeats and reiterates all previous paragraphs as if fully set forth here.

29. Defendants Advance and/or Molloy illegally sold plaintiff's property by failing to observe the timing requirements as set forth in the pertinent statute; to wit failing to timely deliver a ten day notice.

30. Defendants Advance and/or Molloy illegally sold plaintiff's property by failing to observe the advertising requirements as set forth in the pertinent statute; to wit failing to advertise once a week for two consecutive weeks after delivery of a ten day notice and at least fifteen days prior to a sale.

31. Defendants Advance and/or Molloy knew that a ten day notice of a sale scheduled for November 12, 2020 was not delivered at the time of the sale.

32. Upon information and belief Advance and/or Molloy illegally sold plaintiff's property by failing to display the property at the sale.

33. Defendants Advance and/or Molloy illegally sold more of plaintiff's property that was reasonably necessary to satisfy its lien.

34. Defendants Advance and/or Molloy knew they were violating the statute.

35. Defendants Advance and/or Molloy corporate policy ignores the laws applicable to warehouse operators.

36. Defendants Advance and/or Molloy knew the value of the property was in excess of $50,000.

37. Defendant Advance claimed an amount due of approximately $10,000.

38. Plaintiff's property was worth approximately $100,000.

39. Plaintiff has paid storage charges for at least 22 years in the approximate amount of $75,000.

40. Defendants Advance and/or Molloy deprived plaintiff of his right to redeem his property.

41. Plaintiff was deprived of the property not necessary to satisfy Advance and/or Molloy's lien.

42. Advance and/or Molloy ignored the law and did not act with commercial reasonableness in selling plaintiffs property.

43. Plaintiff was damaged by the illegal sale conducted on November 12, 2020, in the minimum amount of $175,000 or such other amount as may be ascertained at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
### Conversion under New York Law

44. Plaintiff repeats and reiterates all previous paragraphs as if set forth here.

45. Advance and/or Molloy knew they had to conform to the statute.

46. Advance and/or Molloy knew they failed to advertise once a week for two consecutive weeks after delivery of a ten day notice and at least fifteen days prior to a sale.

47. Advance and/or Molloy knew that the notice they sent would not be delivered before the time of sale and within the time required by statute.

48. Advance and/or Molloy knew it had to display plaintiff's property at the sale it held of plaintiff's property.

49. Upon information and belief Advance and/or Molloy sold plaintiff's property in a sealed container or covered upon pallets.

50. Advance and/or Molloy sold more of plaintiff's property than was commercially reasonably necessary to satisfy all outstanding charges.

51. Advance and/or Molloy ignored the law and did not act with commercial reasonableness in selling plaintiff's property.

52. Plaintiff was deprived of his right to redeem his property.

53. Plaintiff was deprived of the property not necessary to satisfy Advance's lien.

54. Advance and/or Molloy proceeded to sale to fulfill a corporate policy aimed at the public knowingly not in compliance with the law.

55. Advance and/or Molloy willfully and recklessly disregarded the legal timing requirements they knew must be fulfilled before selling off plaintiff's property.

56. Advance and/or Molloy willfully and recklessly failed to deliver a notice of sale as required.

57. Advance and/or Molloy willfully and recklessly failed to advertise as required.

58. Advance and/or Molloy willfully and recklessly disregarded displaying plaintiff's property.

59. Advance and/or Molloy willfully and recklessly sold more of plaintiff's property than was reasonably necessary to satisfy its lien.

60. Advance and/or Molloy willfully and recklessly disregarded the law known to it.

61. Advance and/or Molloy converted the property of plaintiff resulting in plaintiff's loss and detriment in the minimum amount of $175,000 or such other amount as may be ascertained at trail, along with punitive damages of $1,750,000.

## AS AND FOR A THIRD CAUSE OF ACTION
Conversion under New York law by the individual defendants identified herein as "John Doe #1 through John Doe #5 inclusive"

62. Plaintiff repeats and reiterates all previous paragraphs as if set forth here.

63. John Doe #1 through John Doe #5 inclusive, are intended to be the officers of Advance and/or Molloy who authorized and participated in the illegal sale or developed or approved the policy resulting in an illegal sale.

64. The John Doe defendants acted in willful and reckless disregard of the law concerning a warehouseman's lien sale as set forth in this complaint.

65. The John Doe defendants are responsible for the conversion of plaintiff's property.

66. The actions of the John Doe defendants resulted in plaintiff's loss and detriment in the amount of $175,000 or such other amount as may be ascertained at trail, along with punitive damages of $1,750,000.

## FOURTH CLAIM
## AS AND FOR A FOURTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### Under Florida Law

67. Plaintiff repeats and reiterates all previous paragraphs as if set forth here.

68. The defendants acts described in this complaint constitute extreme outrageous conduct against the plaintiff in that they undermined faith and reliance upon the laws necessary for a civilized society.

69. Defendants recklessly and intentionally caused Plaintiffs emotional distress by refusing to follow the requirements of the warehouseman's law including failure to give proper notice of sale, proper advertisement, proper display of plaintiff's goods and selling more of plaintiffs goods than was necessary to satisfy its lien.

70. Defendants informed plaintiff of their intention to sell his property via email directed to plaintiff in Florida.

71. Plaintiff via email informed defendants that he did not receive any notice of sale or other required papers.

72. Defendants via email informed plaintiff of a Post Office tracking number.

73. Plaintiff informed defendants via email that Post Office tracking system showed non-delivery of their mailing.

74. Plaintiff informed defendants via email that his property was worth more than $50,000 and included antiques and craft pieces.

75. Plaintiff informed defendants via email of the anguish the sale would cause.

76. Defendants intended to cause Plaintiff to suffer emotional distress, or, in the alternative, defendants engaged in the conduct with reckless disregard of the high probability of causing plaintiff to suffer emotional distress.

77. The conduct of the defendants in holding the sale had a profound effect upon plaintiff's physical and mental condition.

78. The result of defendants omissions and failures with regard to observation of the law, extinguishing plaintiff's right to redeem and selling more of Plaintiff's property that was necessary to satisfy its lien, and the consequences proximately caused by it, plaintiff suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body as follows: sleepless nights, nightmares, tremors, sporadic inability to concentrate, internal bleeding and other physical disabilities.

79. Defendants recklessly and illegally sold off memorabilia of Plaintiff's family including pictures, movies and awards of plaintiff's children as they were growing up destroying remembrances and recollections, all of this to plaintiff's anguish and damage.

80. The conduct of the defendants was willful, wanton, malicious, deliberate, and calculated to cause the damages and reactions as stated herein.

81. Plaintiff is entitled to damages of $1,000,000 or in such other amounts as may be ascertained at trial.

## FIFTH CLAIM
## AS AND FOR A FIFTH CAUSE OF ACTION
Violation of The Florida Deceptive and Unfair Trade Practices Act (FDUPTA)
Under Florida Law

82. Plaintiff repeats and reiterates all previous paragraphs as if set forth here.

83. Upon information and belief, the actions of Defendants described in this complaint are part of a routine illegal commercial practice of the Defendants.

84. The defendants' acts described in this complaint constitute a deceptive act and an unfair business practice under FDUTPA.

85. Plaintiff is a person of interest as a consumer under FDUTPA.

86. Defendants engaged in trade or commerce under FDUTPA by offering or providing a service for a Florida resident.

87. Defendants engaged in trade or commerce under FDUTPA through emails and U.S. mail directed at plaintiff a Florida resident

88. Defendants engage in offering warehouse storage facilities to the public, moving services to the public, including movements into the State of Florida and upon information and belief engage as a commercial practice the disregarding of the laws applicable to them regarding storage lien sales.

89. Upon information and belief the defendants Advance and Molloy, or one or both, maintain significant assets in Florida in the form of facilities of an unknown nature in West Palm Beach, Pompano Beach and Miami.

90. As a result of defendants deceptive act and unfair business practice plaintiff lost forever personal property of great value.

91. The defendants acted in a deceptive manner.

92. The defendants engage unfair practices by a reckless disregard of law applicable to warehousemen as described herein.

93. By reason of Defendants deception and unfair practices plaintiff has been damaged in a minimum amount of $175,000 or such other amount as ascertained at trial.

## SIXTH CLAIM
## AS AND FOR A SIXTH CAUSE OF ACTION
### Punitive Damages
### Under New York and/or Florida Law

94. Plaintiff repeats and reiterates all previous paragraphs as if set forth here.

95. Defendants actions described in this complaint were willful and wanton and were done with a deliberate intention to harm or with utter indifference to or conscious disregard for plaintiff's welfare.

96. Defendants actions and policies were directed at plaintiff and the warehousing users of the public.

97. Defendants actions described in this complaint are so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

98. Plaintiff is entitled to punitive damages in an amount of $1,750,000 or that which may be ascertained at trial.

WHEREFORE, plaintiff demands judgment as follows:

Upon the first cause of action compensatory damages of a minimum of $175,000 or that which may be ascertained at trial;

Upon the second cause of action compensatory damages of a minimum of $175,000 along with punitive damages of $1,750,000 or that which may be ascertained at trial;

Upon the third cause of action compensatory damages of a minimum of $175,000 along with punitive damages of $1,750,000 or that which may be ascertained at trial;

Upon the fourth cause of action damages of $1,000,000 or in such other amounts as may be ascertained at trial.

Upon the fifth cause of action compensatory damages of a minimum of $175,000 or that which may be ascertained at trial;

Upon the sixth cause of action punitive damages in an amount of $1,750,000 or that which may be ascertained at trial;

and for such other relief deemed just and proper.

Martin Bernsley, Pro Se

| | |
|---|---|
| Mailing Address | Post Office Box 9665<br>Fort Lauderdale, FL 33310 |
| Service Address | 8400 Sunrise Lakes Blvd<br>Unit 204<br>Sunrise, Fl 33322 |
| Telephone | 917 825 8098 |
| Email | mhbernsley@gmail.com |